## HILLIARD FIELD *v.* THE STATE.

1. HOMICIDE. *Poisoning. Evidence. Res gestæ. Declarations of victim.*
   The statements of a poisoned person as to his symptoms, existing at the time he speaks, are admissible in evidence on the trial of the prisoner, but his narrative of what he drank an hour before cannot be proved.

2. EVIDENCE. *Declarations of a person hurt. Interval after injury.*
   Declarations of an injured person are usually incompetent, unless simultaneous with the particular event, but have been admitted in evidence when made very shortly thereafter to the first person offering assistance or inquiring, and before opportunity or motive for fabrication.

ERROR to the Circuit Court of Monroe County.

Hon. J. A. GREEN, Judge.

*Houston & Reynolds* and *F. M. Rogers,* for the plaintiff in error.

The declarations about eating the bread and drinking the coffee were incompetent, and their admission led to the verdict. In that coffee the chemist found the arsenic, and the statement made during the wife's sickness, that she drank it an hour before, indicated that as the cause of her death. " On fire inside " was a symptom of arsenical poisoning. The declarations of the deceased as to the symptoms and effects of the malady from which she was suffering may be admissible, but the statement as to what she had eaten is not within the rule, but is hearsay. *Fondren* v. *Durfee*, 39 Miss. 324; *Grangers' Ins. Co.* v. *Brown*, *ante*, 308; 1 Wharton Evid. § 268.

*T. C. Catchings*, Attorney General, for the State.

The statements of the deceased were properly admitted. In the language of the court, in *Fondren* v. *Durfee*, 39 Miss. 324, they were made to one who was acting for her good and interested in her welfare. He stood in the relation which called for truth and confidence on her part. When the nature of a person's sickness is in question, his declarations to his physician or other attendant, during such sickness, may be received. 1 Wharton Evid. § 268.

CHALMERS, J., delivered the opinion of the court.

The plaintiff in error has been convicted of the murder of his wife by poisoning, and sentenced to be hanged. The principal error of law assigned as ground for reversal of the judgment arises upon the competency of certain statements made by the wife, which were admitted as part of the *res gestæ*. About eight o'clock in the morning, the wife, who had been up to that time in good health, was discovered in her room, suffering intensely and vomiting violently. The alarm was at once given, and the husband, who was in his field at work, was summoned. Upon reaching the house, he was observed to empty a tin bucket of the coffee contained in it, and fill it with water. The wife continuing to grow worse, the manager of the plantation upon which the parties were laborers was sent to for medicines and assistance. He came with medicine, which he administered to the sick woman. In response to his inquiries as to her feelings and symptoms, she said that she felt as if she was on fire inside, and being asked what she had

eaten, replied nothing, except some bread and coffee at breakfast. She died the next day, and a subsequent analysis of some minute particles which clung to the sides of the coffee-pot, which the plaintiff in error had first emptied and then filled with water, developed arsenic in considerable quantities.

It is conceded that the answer of the woman as to her feelings and symptoms as embodied in the declaration — that she felt as if on fire inside — were admissible in evidence, but it is insisted that her statement as to having drunk the coffee was not. We think the objection is well taken, and that the two answers serve well to illustrate the true test to be applied in determining the admissibility of this class of evidence. The groans, exclamations, or statements of a sick or injured person, expressive or explanatory of his then present feelings or symptoms, whether made to a physician or other person, are receivable in evidence, because they are regarded as illustrative of the symptoms; and where the symptoms constitute the fact to be determined, the exclamations and explanations uttered while they are suffered are properly treated as a part of the *res gestæ.* It being competent for the State, in determining whether the deceased came to her death in this case by poisoning, to prove by those who attended her the symptoms which she exhibited during her sickness, it was admissible to prove her statements and expressions relative to those symptoms, made and uttered while they were being endured. *Fondren* v. *Durfee*, 39 Miss. 324. But if the statements are narrative in form, relate to the past rather than the present, and detail the causes which have produced the symptoms rather than the symptoms themselves, they are inadmissible, whether made to a physician or to a non-professional attendant. *Grangers' Ins. Co.* v. *Brown*, ante, 308, and authorities cited; *Denton* v. *State*, 1 Swan, 279. So also words spoken by either party during a combat are admissible as parts of the *res gestæ*, because they serve to illustrate their acts, and being simultaneous in point of time, they become in truth a part of the acts; but when the combat has ceased, and the parties have withdrawn from the presence of each other, the account which one may give of what occurred during the encounter is not admissible in evidence against the other. Slight depart-

ures have sometimes been made from this rule, and statements, neither simultaneous nor contemporaneous with the principal event, have been admitted as part of the *res gestæ*. Thus, in *Thompson* v. *Trevanion*, Skinner, 402, which was an action for injuries to the wife of the plaintiff, the court " allowed that what the wife said immediately upon the hurt received, and before that she had time to devise or contrive anything for her own advantage might be given in evidence." So in *Rex* v. *Foster*, 6 Car. & P. 325, a man who had been run over by a cab was heard to groan, by one who was standing near by, but not looking in that direction. The bystander ran to him and asked him what was the matter, and the reply made was admitted in evidence in a prosecution of the driver of the cab. In *Commonwealth* v. *M'Pike*, 3 Cush. 181, the statement of a bleeding woman, that she had been stabbed by her husband, was admitted in evidence against him, though time enough had elapsed from the reception of the injury for the woman to run up stairs, and for the person to whom the statement was made to go out and fetch a watchman. The exact time is not given. The authority of this case is much weakened, if not destroyed, by subsequent adjudications of the same court. *Lund* v. *Tyngsborough*, 9 Cush. 36 ; *Chapin* v. *Marlborough*, 9 Gray, 244 ; *Commonwealth* v. *Densmore*, 12 Allen, 535. In *People* v. *Vernon*, 35 Cal. 50, the statement of the person injured, made within three quarters of a minute after receiving the fatal shot, to the first person who reached him, was received. So, too, in *Mitchum* v. *State*, 11 Ga. 615, a statement made within one minute after the shot, to a person who heard it, and towards whom the wounded man ran instantly upon receiving it, was admitted in evidence. In *Ins. Co.* v. *Mosley*, 8 Wall. 397, statements made a longer time after the reception of the injury were admitted, though the exact time is not given. It probably did not exceed ten or fifteen minutes, and the statements were made to the first persons whom the injured man reached. The case was decided by a divided court, and we are by no means sure that the opinion of the minority is not the sounder, both upon principle and authority. The exception to the rule that declarations, in order to be admissible, must be simultaneous or contempo-

raneous with the principal event, as deduced from these and similar cases, seems to rest upon the idea that the interval of time has been very brief, that they are made to the person first proffering assistance or making inquiry, and that there has been neither opportunity nor motive for fabricating a false story.

The case at bar does not come up to these requirements. The time which elapsed between the drinking of the coffee by the deceased, and her statements with regard to it, is not fixed, but we gather from the record that about one hour probably intervened. Several persons had reached her and undertaken to relieve her before the manager of the plantation was sent for, and it is reasonable to suppose that surmises and suggestions had been made by them, as they gathered around her bedside, with reference to the nature and cause of her malady. If, under these circumstances, she had stated that her husband had put a powder in the coffee, and given it to her to drink, it would hardly be contended that this declaration could have been used against him in a subsequent prosecution for her murder. That she stopped short of this, and stated only that she had drunk the coffee, does not, so far as we can see, affect the result. We think the testimony was improperly admitted, and for this error we reverse the judgment, and award a new trial.

*Judgment accordingly.*