EARL REDDING, PLAINTIFF IN ERROR, v. STATE OF NEBRASKA, DEFENDANT IN ERROR.

85 N. W. 2d 647

Filed October 25, 1957. No. 34228.

308

▮▮▮▮▮▮▮▮▮▮  ▮▮▮▮
▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮  ▮▮▮▮▮▮▮▮

*Sterling F. Mutz,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, and *Cecil S. Brubaker,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

Defendant was charged with manslaughter under the provisions of section 28-403, R. R. S. 1943. The jury returned a verdict of guilty and defendant was sentenced to serve 2 years in the Nebraska State Reformatory for Men. The defendant seeks a review of the case in this court by proceedings in error.

The defendant was a man 60 years of age and weighed 175 to 180 pounds. At the time of the alleged crime he was employed as an attendant at the Lincoln State Hospital, a hospital for patients who are mentally ill. The evidence shows that he was the chief attendant in ward A-1, at the time of the alleged offense. One Melvin Watkins was assigned as an attendant in the same ward and assisted the defendant in the performance of his duties. The ward is sometimes called the "untidy ward" because of the inability of some of the patients to control calls of nature. It is the duty of an attendant to see that patients get to bed at night, to get them up in the morning, take them to and bring them back from meals, see that they bathe regularly, change their clothes when necessary, and generally look after their care and welfare. On the day in question there were 39 patients in the ward of which the deceased was one.

The deceased, Charles Copperstone, was a man 76 years of age, about 5 feet 6½ inches tall, and weighed about 122 pounds. He was admitted to the hospital on July 24, 1942. He was suffering from an involutional psychosis and was an inmate continuously until his death. He was a quiet, well-behaved patient and had never caused any trouble. He was not in good physical health. He suffered from many ailments, most of which were the result of his advanced age.

The evidence shows that at or about 9 p.m., on November 1, 1956, the defendant inquired of the deceased if it wasn't about time to go to bed. The deceased said that it was. Defendant asked if he wanted help. The deceased replied that he did because he could not get up from his chair. Defendant reached under deceased's arms from the back, lifted him up, and practically carried him to his room some 10 feet away. Deceased stated he could not undress himself. Defendant undertook to remove his clothing as he lay on the bed. The deceased, for some reason not shown in the record, resisted the efforts of defendant to remove his clothes. About this time the witness Watkins came into the room and turned on the light. Defendant told him that he did not need the light and Watkins turned it off. Watkins testified that as he approached the room occupied by the deceased he heard groans and sounds like blows being struck. He testified also that he saw defendant striking the deceased three or four times with his fist, in the area of the chest, as near as he could tell. He then assisted defendant by straightening the legs of the deceased in order to remove his trousers. After removing his clothes they covered him up and left the room. Watkins testified that as they left the room the defendant said: "Maybe he will take off his clothes by himself the next time."

On November 2, 1956, at about 8 a.m., Dr. T. K. Jones was called to attend the deceased. He found bruises on the chest, the right arm, and shoulder. He was there-

upon sent to the receiving hospital. It was ascertained by X-ray pictures that deceased had several ribs broken on each side. He developed bronchopneumonia. He rested well the first night and the early part of the second. About 4:30 a.m. on November 4, 1956, he suddenly expired. An autopsy was performed which revealed 5 fractured ribs on the left side and fractures of 4 ribs on the right side. There is competent evidence by a physician that the rib fractures and the resulting shock were the precipitating causes of the death of the deceased.

The defendant testified that he had been employed at the hospital for many years, that he had an unblemished record, and that he had strictly complied with all rules during his employment. He testified that as he carried the deceased to his room on the night of November 1, 1956, the latter, suddenly and without warning, resisted going through the door and onto the bed. The deceased became belligerent. He swung his arms and attempted to hold the defendant's hands to avoid being undressed. After his shoes were removed the deceased slid off the bed. Defendant struck him lightly across the buttocks with a shoe. When he got him back on the bed defendant proceeded to remove his shirt. The deceased continued to resist, and defendant pushed him down with his right hand. Defendant stated he may have used his fist. He said he struck deceased lightly with the right hand only with such force as was necessary to get him down on the bed for the purpose of removing his clothing, and without such force as would fracture his ribs. He looked in deceased's room twice during the night and noticed that he appeared to be asleep on each occasion.

The defendant gave a written statement before the trial, which he said was voluntarily given. In the statement he admitted striking the deceased with a shoe on the buttocks or chest. He admitted striking him on the chest once or twice with his hand. He admitted that

as he left the room he told Watkins: "Maybe he will undress himself the next time," or something similar. He said the deceased made him angry when the deceased tried to prevent him from undressing him.

The manslaughter statute, section 28-403, R. R. S. 1943, provides in substance that whoever shall unlawfully kill another without malice, or unintentionally, while the slayer is in the commission of some unlawful act, shall be guilty of manslaughter. The State asserts that the defendant was, at the time, violating section 83-356, R. R. S. 1943, which provides: "Any person taking care of a mentally ill person, and restraining such person, either with or without authority, who shall treat such person with wanton severity, harshness or cruelty, or shall in any way abuse such a person, shall be guilty of a misdemeanor, and shall be liable in an action for damages."

The evidence as to whether or not the defendant was engaged in an unlawful act is in conflict. It clearly raised a question for the jury under proper instructions. The trial court, therefore, correctly overruled defendant's motion for a directed verdict at the close of the State's evidence and at the close of all the evidence.

The defendant complains of the admission of certain evidence to which proper objection was interposed. On direct examination Dr. Jones was asked the following questions and gave the following answers: "Q. You may relate the history that Mr. Copperstone furnished you at that time, Doctor. * * * A. I asked him how he received his injury, and he said that he had been beaten up by two attendants. Q. Did he say when? * * * A. He said he was injured the evening before. That was on the morning of November 2nd. He said, 'I was injured last evening.'" Objection was duly made to each question on the ground that it was hearsay, without foundation, and incompetent. The objections were overruled. Motions to strike the answers were likewise overruled by the trial court.

The evidence was clearly within the hearsay rule. No foundation evidence was offered to bring it within any of the exceptions to the hearsay rule such as being res gestae or a dying declaration. It is urged that it is admissible as a part of the medical history obtained by the physician from the deceased. A statement to a physician is not admissible merely because it is a part of a medical history. Strict limitations have been placed upon the admission of such evidence. The general rule is: Statements by an injured person as to cause of the injury and the circumstances attending its occurrence, made to a physician so long thereafter as not to be a part of the res gestae, are not admissible since they are a narration of a past event. The cases on this subject have been collected in 67 A. L. R. 25 and 80 A. L. R. 1529. There are cases, usually civil rather than criminal, where a physician may testify to the injured person's narrative of the history of the injury, which was obtained for the purpose of diagnosis and treatment, where the statements are a part of the description of the wound and inseparable from the patient's complaint with respect thereto. Under this rule, as an example, the physician may testify, as a part of the history, that the patient said he was bitten by an insect, or that he bruised the inflamed parts. The physician may testify as to his patient's complaints of pain resulting from an injury, but not as to its cause and manner of occurrence. In the case before us the physician found objective symptoms of the injury on the body of the deceased. By palpation of the area he was able to localize the injury by the expressions of pain by the deceased. The manner in which the trauma was sustained, and the person responsible for its application, was of no importance to the physician in diagnosing and treating the deceased. The evidence to which objection was made was nothing more than the recitation of a past event and inadmissible as hearsay. Field v. State, 57 Miss. 474, 34 Am. R 476; State v. Gruich, 96 N. J. L. 202, 114 A. 547; State v.

Barber, 13 Idaho 65, 88 P. 418. See, also, the cases collected in 67 A. L. R. 25.

The hearsay evidence was clearly prejudicial. With the pertinent evidence in direct conflict, the hearsay statement of Dr. Jones that the deceased said it resulted from a beating by two attendants could well have tipped the scales by which the jury was weighing the evidence in favor of the State. It was reversible error for the trial court to admit this evidence over proper objection. The State cites Roberts v. Kubik, 129 Neb. 795, 263 N. W. 143, in support of its contention that the hearsay statements of the physician were not prejudicial. The case is clearly distinguishable. In that case the physician was permitted to repeat the statements made to him by the plaintiff as to who inflicted the injuries, and the manner in which it was done. The opinion shows that every fact recited by the physician was testified to by plaintiff's witnesses and that the plaintiff also testified to every fact testified to by the physician. The error in admitting the evidence was held to be without prejudice. In the case before us the physician's informant was dead at the time of the trial. No evidence of the version of the deceased was in the record. It was new primary evidence of pertinent facts. It is not similar to the situation existing in Roberts v. Kubik, *supra.*

Since the case must be reversed for a new trial, we shall point out a plain error in the record which was not raised by proper objection, in order that its repetition may be avoided. See Hartman v. Hartmann, 150 Neb. 565, 35 N. W. 2d 482. The charge contained in the information is that the defendant unlawfully killed Charles Copperstone while defendant was engaged in an unlawful act. The unlawful act relied on was the alleged violation of section 83-356, R. R. S. 1943. We point out that this section contains no penalty for the criminal violation of its terms. Nor is a penalty fixed by any other applicable section of the statutes.

All crimes in this state are statutory. A penalty is

a necessary part of a statutory offense. One may not be convicted for a purported criminal offense where the statute provides no penalty for its violation. In State v. Fair Lawn Service Center, Inc., 20 N. J. 468, 120 A. 2d 233, the court said: "A law generally consists of three parts: (1) The scope and intent of the law; (2) the content of the law; (3) a sanction or penalty, and this is peculiarly true of a criminal or quasi-criminal statute. A criminal statute without a penalty clause is of no force and effect. The penalty is an essential to such a statute, and if none is specified a court has no warrant to supply the penalty if the Legislature has failed to clearly manifest such intention to impose one." In McNary v. State, 128 Ohio St. 497, 191 N. E. 733, the court said: "A statute cannot be classed as a criminal statute unless a penalty is provided for its violation. A criminal statute without a penalty is fundamentally nugatory."

We conclude that section 83-356, R. R. S. 1943, does not create a statutory offense. It is completely nugatory insofar as it purports to create a criminal offense. This being true, the statute cannot properly add to or detract from the elements of the crime of manslaughter charged in the information. It was prejudicial error, therefore, for the trial court to instruct with reference to section 83-356, R. R. S. 1943, and assume that a violation of such section was proof of an unlawful act required by section 28-403, R. R. S. 1943.

We do not intend to infer that an unlawful act under section 28-403, R. R. S. 1943, must necessarily arise out of the violation of a criminal statute. Such is not the fact. See Stehr v. State, 92 Neb. 755, 139 N. W. 676, 45 L. R. A. N. S. 559, Ann. Cas. 1914A 573; Annotations, 10 A. L. R. 1137, 1151. What we do say is that a criminal statute creating an offense, but containing no penalty, is nugatory in all respects, and proof of its violation is not of itself sufficient to prove an unlawful act in a prosecution for manslaughter.

The information charges the crime of manslaughter although it uses the word "feloniously" unnecessarily. It is mere surplusage under the previous holdings of this court. There is evidence in the record of an unlawful act, although disputed by the defendant. A jury question is therefore present. The defendant is entitled to have the case submitted on competent evidence and proper instructions. For the reasons given, the judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.

YEAGER, J., participating on briefs.