STATE OF NEBRASKA, APPELLEE, v. JAMES B. MADARY, APPELLANT.

133 N. W. 2d 583

Filed March 5, 1965. No. 35875.

Richard M. Duxbury, for appellant.

Clarence A. H. Meyer, Attorney General, and Homer G. Hamilton, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

BROWER, J.

James B. Madary, hereinafter called the defendant, in a proceeding brought by the State of Nebraska as plaintiff and appellee, sometimes referred to as the State, at a trial had in the district court for Lancaster County, Nebraska, was found to be a sexual psychopath and was committed to the Lincoln State Hospital at Lincoln, Nebraska.

. The proceedings were brought under Chapter 29, article 29, of the Reissue Revised Statutes of Nebraska, 1943, as amended, being section 29-2901, R. R. S. 1943, section 29-2902, R. S. Supp., 1963, and sections 29-2903 to 29-2907, R. R. S. 1943. These statutes provide a special procedure in cases of sexual psychopaths. Section 29-2901, R. R. S. 1943, defines a sexual psychopath as follows: "As used in sections 29-2901 to 29-2907, unless the context otherwise requires, the term sexual psychopath shall mean any person who, by a course of misconduct in sexual matters, has evidenced an utter lack of power to control his sexual impulses and who, as a result, is likely to attack or otherwise inflict injury, loss, pain, or other evil on the objects of his uncontrolled and uncontrollable desires."

Section 29-2903, R. R. S. 1943, provides that one adjudged to be a sexual psychopath be committed to a state hospital and makes provision for his care and treatment while so committed.

Section 29-2904, R. R. S. 1943, provides among other things that competent evidence of defendant's prior conduct to show sexual psychopathy be received at trial and places the burden of proof to establish the allegations of the complaint beyond a reasonable doubt.

The procedure in the present case leading to the adjudication and commitment closely follows section 29-2902, R. S. Supp., 1963, which is quite long and will not be separately quoted or reviewed as it is not claimed that there was a departure therefrom.

The State filed a petition by the chief deputy county attorney of Lancaster County on April 24, 1964, alleging the defendant to be a sexual psychopath and seeking a determination of that fact. On the same day the trial court ordered the sheriff to hold the defendant in the county jail and appointed two doctors to examine him and report their findings not less than 10 days prior to a hearing to be held May 19, 1964. The defendant filed on April 27, 1964, an application for the appoint-

ment of counsel with an attached affidavit of indigency. The motion was sustained and counsel was appointed April 29, 1964. The physicians examined the defendant and made separate reports of their examinations which were served on the defendant's counsel on May 8, 1964.

Trial was had on May 19, 1964. A motion was made by the defendant immediately before trial to dismiss the proceeding and to grant the defendant a separate and preliminary hearing to establish by evidence the matters set forth in his oral motion. The motion was overruled and the case proceeded to trial to the court, a jury being waived by both parties.

Dr. Robert Johnston Stein, a consultant at the Lincoln Veterans' Hospital and Lincoln State Hospital, and Dr. Richard W. Gray, superintendent at the Lincoln State Hospital, both specialists in psychiatry with long experience in mental cases, each testified. Dr. Stein had examined the defendant on May 7, 1964, and Dr. Gray on May 4, 1964, at their respective offices. They each testified that the defendant had given them a long personal history admitting indecent exposures in the past and of being arrested on many occasions because thereof. This commenced in the year 1958 when he was in military service. Each doctor severally gave his opinion that the defendant evidenced an utter lack of power to control these sexual impulses and that he was likely to inflict injury, pain, or other evil on the objects of his uncontrollable desires. The written findings and reports of each doctor were admitted in evidence. Dr. Gray testified when the doctor asked the defendant if he cared to discuss the problem with him, the defendant answered, " 'Let's talk.' " There is no evidence of unwillingness to tell his story to either doctor.

On cross-examination each doctor stated that his findings and opinion were based primarily on what the defendant had told him in the examination. Each stated in substance that the defendant was passive in nature, and that it was his opinion that defendant would not at-

tack or hurt anybody. Dr. Stein stated he had seen a list of offenses of the defendant at the county attorney's office before the examination. He considered them part of the record and might have placed some reliance on these records but this would not have changed his subsequent and final diagnosis. Dr. Gray had not seen them until his findings and report had been made.

The defendant testifying on his own behalf stated he was arrested April 22, 1964, in the city of Lincoln and taken to the jail where he remained all night. The next morning he was brought.to the county attorney's office and from there he was taken to the county jail where he remained until trial. He was refused permission to call an attorney shortly after going to jail and once or twice thereafter.

On cross-examination he stated he knew counsel had been appointed for him and had discussed the matter with his attorney several times after he was at the doctors. When asked if he was arrested on April 22, 1964, for indecent exposure he said he did not know what for at the time of apprehension but was later so told.

Eugene Robert Henninger, a captain in the Lincoln police department in charge of detectives who was called by the defendant, stated that the defendant was arrested at 9:30 p.m., on April 22, 1964, without a warrant by the Lincoln police department. Defendant was arrested because of a complaint of a lady but the witness was not permitted to state the nature of it.

After both parties rested the State was permitted to withdraw its rest and introduce a transcript of the county court of Lancaster County consisting of a complaint filed against the defendant therein on April 14, 1964, which charged him with willfully making an indecent exposure of his person, and a journal of a sentence thereon dated April 17, 1964, containing a finding that the defendant was guilty of the offense charged.

At the conclusion of the trial the defendant was found to be a sexual psychopath resulting in his commitment,

and his motion for a new trial having been overruled, he has brought the case to this court by appeal. The assignments of error will be set forth as discussed.

The defendant first assigns error to the trial court in overruling his motion made before trial to dismiss the proceeding and to grant a hearing to establish by evidence the matter set forth therein. In his motion defendant claimed he had been deprived of his rights under the Constitutions of the United States and the State of Nebraska by being denied due process of law, the equal protection of the law, and by being placed in double jeopardy. Further, that the sexual psychopath law unconstitutionally provides for self-incrimination.

The only case of this court touching any of the statutes under consideration is State v. Noll, 171 Neb. 831, 108 N. W. 2d 108, in which case the defendant admitted that the procedure for the commitment under these statutes was constitutional and the only question involved was the procedure for the release of the sexual psychopath after conviction. The case is of little assistance in the proceeding before us.

To support his contention defendant cites several cases from the various courts of the United States and from state courts including a decision of this court, State v. O'Kelly, 175 Neb. 798, 124 N. W. 2d 211, all involving the violation of constitutional rights of defendants in criminal cases. Defendant contends also his arrest was illegal because it was made without a warrant and that it was in the absence of evidence that a crime was committed and with reasonable grounds to believe that the person arrested committed it. Defendant contends the fruits of the illegal arrest, which in this case he claims consist of the admissions and statements given to the examining physicians, all flowing from the illegal arrest, were obtained in violation of the Fourth Amendment to the United States Constitution and Article I, section 7, of the Nebraska Constitution.

We think the defendant misconceives the nature of the

present proceeding. An extended annotation on statutes relating to sexual psychopaths is set forth in 24 A. L. R. 2d 350. The preliminary discussion on page 351 of the annotation states: "Statutes of the type under consideration are a recent development in the law—a development occurring mainly during the last two decades. They are especially designed to cope with sex offenders who, because of a psychopathic condition, commit or have a tendency to commit such offenses. They recognize that the sexual psychopath is neither normal nor legally insane and, for that reason, requires special consideration, both for his own sake and for the safety of society. Such statutes represent a new approach to an age-old problem of which the public has become increasingly aware—to the point of alarm in recent years—both because of the apparent increase in the number of sex crimes and because of the more widespread notoriety given such crimes in the public press. They represent a new approach, reflecting the thinking of modern psychiatry and psychology, in that they provide civil commitment, segregation, and treatment of the sexual psychopath rather than criminal punishment, whose ineffectiveness as a deterrent has been demonstrated by the number of sex offenders who have repeated their offenses after criminal conviction. The social objective of such statutes is twofold: (1) to protect by sequestering the sexual psychopath so long as he remains a menace to others, and (2) to subject him to treatment to the end that he might recover from his psychopathic condition and be rehabilitated. Fewer than twenty jurisdictions have enacted such legislation."

A general rule in section 2, Annotation, 24 A. L. R. 2d 352, states that: "Statutes providing for the commitment to a state institution for treatment of persons found to be sexual psychopaths have generally been held not to be criminal statutes." It is supported by the cases of State ex rel. Sweezer v. Green, 360 Mo. 1249, 232 S. W. 2d 897, 24 A. L. R. 2d 340, to which the annotation is

appended; In re Moulton, 96 N. H. 370, 77 A. 2d 26; and People v. Redlich, 402 Ill. 270, 83 N. E. 2d 736.

The constitutionality of a quite similar Minnesota statute was upheld in State ex rel. Pearson v. Probate Court, 205 Minn. 545, 287 N. W. 297. The exact constitutional objections advanced were not all set out by the Supreme Court of Minnesota in its opinion, where it is stated: "The final argument of the relator is that the act denies a 'patient' a jury trial and fails to secure certain other rights of defendants in criminal proceedings. Since the proceedings here in question are not of a criminal character, we will confine ourselves to consideration of relator's right to a jury trial." The decision was affirmed by the United States Supreme Court in Minnesota ex rel. Pearson v. Probate Court, 309 U. S. 270, 60 S. Ct. 523, 84 L. Ed. 744, 126 A. L. R. 530, where that court held that the statute did not deny the appellant therein the equal protection of the laws under the Constitution of the United States, nor was it invalid on its face as not setting up procedure which adequately safeguarded the fundamental rights embraced in the conception of due process.

In the case of In re Keddy, 105 Cal. App. 2d 215, 233 P. 2d 159, where after conviction of sexual offenses proceedings were instituted against the convicted defendant under a statute providing for the detention, investigation, and commitment of "sexual psychopaths," the court held: A proceeding for investigation and for commitment of an alleged sexual psychopath is civil in nature, and the person committed is not confined for commission of a criminal offense.

The statute providing for commitment of sexual psychopaths does not deny equal protection of the laws.

The sexual psychopath statute providing for investigation on affidavit of probable cause and commitment does not deprive the accused of his liberty without due process of law.

A statute providing for detention, investigation, and

commitment of alleged sexual psychopaths does not place the accused who has been previously convicted of sexual offenses in double jeopardy.

In People v. Chapman, 301 Mich. 584, 4 N. W. 2d 18, the Michigan court, construing a statute in many respects such as that before us, held that the proceedings under the statute are not criminal in nature and therefore are not circumscribed by the constitutional and statutory limitations surrounding a person accused of, or tried for, a crime. It further held the constitutional provision that no person shall be compelled in any criminal case to be a witness against himself is applicable only in a criminal case, stating the statute providing for a proceeding in the nature of civil inquest to determine whether an individual is a criminal sexual psychopathic person is not in conflict with constitutional provision against "self-incrimination," notwithstanding the statute provides for appointment of psychiatrists to make personal examination of such an alleged person. It held the statute regarding a criminal sexual psychopathic person is a valid and proper exercise of the police power of the state as a measure of public safety.

We think the rules previously quoted apply to similar provisions in the Constitution of the United States and the Constitution of Nebraska, and that the provisions of section 29-2902, R. S. Supp., 1963, are not unconstitutional because thereof.

We see no occasion to consider any constitutional question with respect to the defendant's arrest. He was arrested by a member of the Lincoln police department and taken to jail. Just why he was apprehended and taken to jail is not clearly shown. Nothing is shown to connect the county attorney who is by section 29-2902, R. S. Supp., 1963, given the responsibility of initiating proceedings under the sexual psychopath law with the arrest by a member of the Lincoln police department. The defendant had been charged and convicted of indecent exposure on April 14, 1964, 10 days before the

filing of the petition in the trial court. The defendant was taken from jail to the county attorney's office, insofar as can be inferred, for interrogation with respect to his physical and mental condition because of the record of his previous conviction. It was to inquire whether he should be committed and given treatment as a sexual psychopath for the protection both of himself and society and not for punitive incarceration. The examination by the doctors was pursuant to this proceeding instituted by the county attorney. As we view it, defendant's arrest by the Lincoln police department is not connected with and had nothing to do with the present proceeding. The trial court did not err in overruling the defendant's motion.

The defendant next contends the trial court erred in receiving in evidence the findings and opinions of Doctors Stein and Gray because they were based on the history given them by the defendant. The constitutional aspect concerning self-incrimination has hitherto been discussed. He further maintains that it is a rule of law that such opinions cannot be based at least wholly on the history of the defendant. He cites certain cases including Redding v. State, 165 Neb. 307, 85 N. W. 2d 647, from this court. The cited case was a criminal one involving a charge of manslaughter. Statements by the deceased not connected with the res gestae had been admitted in evidence as to past events. It was held by this court that as used against the defendant the statements were hearsay and inadmissible as such. This rule has no application in the present case where the testimony relates to admissions of the defendant made to the doctors upon examination. Defendant also cites other cases from the courts of last resort in other states including Estes v. Babcock, 119 Wash. 270, 205 P. 12, holding that the opinions of expert witnesses based on subjective symptoms obtained from a history given by the one examined outside of court are admissible only to determine the weight to be given to the physi-

cian's opinion but not as evidence to prove the actual condition of the plaintiff at the time. In 51 A. L. R. 2d 1051, there appears a long annotation concerning the admissibility of opinion of a medical expert as affected by his having heard the person in question give the history of his case. Some of the decisions there cited turn on the question of whether the history given was attempted to be used on behalf of the party giving them. In such cases they are clearly self-serving declarations. In other instances where the events related are regarded as admissions against interest some courts have admitted them. Another distinction made is whether the history is given to a physician who treats and attempts to cure the patient where some courts have admitted the statements on the theory the patient would tell the truth to the treating physician but have refused to receive it where the history is related to one who makes the examination solely for the purpose of qualifying as an expert witness. Defendant here maintains the examination in this case was solely to qualify the experts as witnesses, a premise which might well be disputed. The annotation here cited contains a labyrinth of decisions based on the precise situation as applied to the particular cases discussed. We deem it unnecessary to discuss these cases.

The basis of the decision in Kaufman v. Kaufman, 164 F. 2d 519, appears to be more applicable here. There the plaintiff sought annulment of her marriage to the defendant on the grounds of matrimonial incapacity and offered evidence of a psychiatrist who had examined both parties. He found the defendant suffering from a nervous disorder and from his history showed inability to have sexual relations with his wife although the doctor found the existence of no physical incapacity. The appellate court there said: "The courts have long recognized the fact that impotence is frequently the result of psychogenic causes. * * * In diagnosing such a subjective condition the physician must necessarily rely

largely upon the history and symptoms described to him by the patient." The appellate court in the cited case held the testimony based on the history should have been admitted. The physicians who testified in the present case were examining the defendant concerning a mental illness and an inability to control his sexual impulses. In such a case their testimony was properly based on the admissions made by the defendant in the history given. Only subjective symptoms were involved and in such case the doctors, of necessity, were testifying as to a purely mental disease which may be evidenced by defendant's history. The contention of the defendant is without merit.

The defendant further objects to the reception of the testimony and the reports of the doctors in the case because the defendant's counsel was not present at the defendant's examination by the doctors. He maintains this resulted in the denial to the defendant of the right of cross-examination and again asserts this resulted in a finding and commitment without due process of law. The New Hampshire court in passing upon that state's statute concerning sexual psychopaths which provided for an examination of the defendant by a board of medical experts quite similarly to that under consideration here in In re Craft, 99 N. H. 287, 109 A. 2d 853, said: "Such a procedure which requires the defendant to submit to an examination by a board of medical experts without notice or a right to be heard does not violate due process. See State v. Allen, (Mo. App.), 255 S. W. (2d) 144, 149. The act seeks not only to protect society but also to benefit those who are sexual psychopaths. In re Moulton, 96 N. H. 370, 373. * * * The examination required by § 4 may result in a discontinuance of further proceedings under the petition or in a hearing and judicial determination of the defendant's mental condition. The necessity for the summary nature of the order providing for it lies in the absence of any basis for judicial action until a medical opinion is available.

Such interference with the defendant's rights as occurs by reason of this procedure is reasonably required." The same reasoning applies to our own statute and the examination by the doctors appointed by the court thereunder. We conclude the provisions of section 29-2902, R. S. Supp., 1963, of the sexual psychopath law requires the person against whom the petition is filed to submit to an examination by physicians appointed by the court upon petition by the county attorney without notice or right to be heard at that examination, and such a provision does not violate the constitutional requirement of due process of law.

The defendant further objects to the testimony, findings, and reports of the doctors being received in evidence because Dr. Stein testified he had seen a list of past violations at the office of the county attorney before his examination and findings were made, and Dr. Gray had seen them thereafter. Again we think the defendant was under a misapprehension as to the office of these doctors and as to the proceeding itself. He has assumed at all times that the position of the doctors is the same as an expert witness who testifies in a lawsuit by the use of hypothetical questions premised on the evidence. We think the position of these doctors is entirely different. They were appointed by the court to conduct a sort of an inquest and report, their preliminary examinations being subject to later cross-examination by the defendant's attorney. We think they are given some latitude in the manner they ascertain information with respect to the defendant's condition. If on cross-examination their opinions and findings are to be set aside because they received some outside information, it would result in nullifying the action of the court in appointing them to make the inquest. We do not think such was the intention of the Legislature in enacting the present statute. At any rate, each doctor's testimony affirmatively shows his final opinion and findings would not be changed by the information re-

ceived. To warrant a reversal of the judgment it must affirmatively appear in the record the action with respect to which the error was alleged was prejudicial to the rights of the complaining party. Larsen v. Omaha Transit Co., 168 Neb. 205, 95 N. W. 2d 554. There is no merit in the contention of the defendant with respect to the admission of the doctors' testimony and findings, nor the absence of the defendant's attorney at the time of the examination.

The last assignment of error by the defendant is that the judgment is not supported by the evidence. No good purpose would be served by an extended review of the testimony of the doctors which plainly presents a history of repeated acts of indecent exposure on behalf of the defendant resulting in convictions therefor. It is sufficient to state it is shown that such conduct has continued over several years. Defendant makes reference to the testimony of both doctors that he was not dangerous in the sense of attacking or hurting others and maintains the judgment cannot be sustained under such circumstances. The evidence as plainly shows he was likely to make indecent exposures in the presence of women. It can be inferred this might occur in the presence of young girls because he is utterly unable to control his actions. Section 29-2901, R. R. S. 1943, provides such commitment and treatment should be given those "likely to attack or otherwise inflict injury, *loss,* pain, or other *evil* on the objects of his uncontrolled and uncontrollable desires." (Italics supplied.) Can it be said that such actions in the presence of women and young girls would not inflict evil upon them and result in a moral loss both to them and the community as a whole? We think not. The evidence is amply sufficient to sustain the judgment entered by the trial court.

We therefore conclude that the judgment of the trial court should be and is affirmed.

AFFIRMED.