Harold James Leroy IRWIN, Appellant,

v.

Charles L. WOLFF, Jr., Warden Nebraska Penal Complex, Appellee.

No. 74–1934.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1975.

Decided Feb. 17, 1976.

Gene C. Foote, II, Hastings, Neb., for appellant.

Ralph H. Gillan, Asst. Atty. Gen., Lincoln, Neb., for appellee. Ralph H. Gillan, Asst. Atty. Gen., and Paul L. Douglas, Atty. Gen., Lincoln, Neb., filed brief for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, BRIGHT, Circuit Judge, and TALBOT SMITH,* Senior District Judge.

TALBOT SMITH, Senior District Judge.

This case comes to us upon appeal from the denial, in the District Court for the District of Nebraska,[1] of appellant's petition for writ of habeas corpus. We affirm.

The petitioner was convicted in the District Court of Adams County, Nebraska, of one count of robbery[2] and six counts of rape.[3] He was sentenced to a term of twenty to twenty-five years for the robbery conviction but was not sentenced for the rape convictions. Shortly thereafter, and in compliance with the state Sexual Sociopath Act[4] (hereafter the Act) he was, after hearing, found to be a sexual sociopath[5] who could not benefit from treatment.[6] Consequent

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. The Honorable Paul Benson, Chief Judge, United States District Court for the District of North Dakota, sitting by designation in the District of Nebraska.

2. Neb.Rev. Reissue Stat. § 28–414 (1943).

3. Neb.Rev.Stat. § 28–408 (Cum.Supp.1974).

4. Neb.Rev.Stat. § 29–2901 et seq. (Cum.Supp. 1974).

5. Neb.Rev.Stat. § 29–2901 (Cum.Supp.1974).

6. Neb.Rev.Stat. § 29–2903(3) (Cum.Supp. 1974).

thereto he was committed for an indefinite period to the Nebraska Penal and Correctional Complex, such commitment being subject to review at yearly intervals either on motion of the defendant or on the court's own motion.[7]

Petitioner's conviction, sentence under the robbery count and commitment were affirmed by the Nebraska Supreme Court in *State v. Irwin*, 191 Neb. 169, 214 N.W.2d 575 (1974). Thereafter petitioner filed a petition for writ of habeas corpus, 28 U.S.C. § 2254 (1966). The petition was submitted to the District Court on the basis of the state court transcripts, the briefs submitted to the Supreme Court of Nebraska, and testimony of the petitioner himself, adduced at an evidentiary hearing held on August 28, 1974.

The grounds alleged in the petition were essentially those presented to the Supreme Court of Nebraska, namely, that the petitioner's arrest was in violation of the Fourth Amendment to the Constitution of the United States, that certain evidence should have been suppressed as a result thereof, and that Nebraska's Sexual Sociopath Act was unconstitutional, in addition to other charges.

It was the holding of the District Court, after an evidentiary hearing, that the evidence presented "did not add to the evidence presented to the Nebraska courts," that "the State's factual determinations are fairly supported by the record, and the applicable law has been correctly applied." It further held that the Act, as interpreted by the Nebraska Supreme Court, was constitutional.

We find it necessary to discuss fully only the issues concerning petitioner's arrest and the constitutionality of his commitment under Nebraska's Act. The principal argument directed to us on this appeal relates to the arrest of the petitioner, asserted to be without probable cause, and the failure of the trial court to suppress certain evidence, alleged to be the "fruit of the poisonous tree." The issues before us were characterized by petitioner's counsel as involving "mainly the arrest of the defendant."[8]

Starting in the early part of 1969 a series of burglaries, robberies, and rapes took place in or near Hastings, Nebraska. These crimes had followed a pattern which need not be detailed here. Certain of these had occurred in the neighborhood where petitioner was ultimately apprehended. A prowler, or prowlers, had also been reported in this residential area a few nights before petitioner's apprehension.

The petitioner had a record of sexual offenses and had at one time been committed to the Hastings State Hospital. The car he drove was a 1970 Pontiac LeMans, gold finish, similar to the car that was involved in a former rape and robbery. During the months of August and September 1971 a number of burglaries occurred in the vicinity of the home of Mr. Elliott, a retired businessman in Hastings. He reported to the police that a car (found to be registered to petitioner) was regularly parked near his residence at an unlighted spot. This car, and petitioner, had previously been observed by Gary Hansel, a criminal investigator for the Nebraska State Patrol, near the scene of two earlier robberies. The Elliott report continued that the driver, after parking in a dark area, would leave the car for a substantial period of time, returning around 10:30 or 11:00 p. m. Around October first the police received a "prowler call" from the Elliott area and about this same time Mr. Elliott reported that he saw this man running back to his car and taking off, as he put it, at a fast pace. Also, Mr. Elliott had observed that the ferns underneath one of his windows had been trampled down as if someone had been

---

7. Neb.Rev.Stat. § 29–2906(2) (Cum.Supp. 1974).

8. Indeed, of some 28 pages of argument in petitioner's brief, approximately 20 pages thereof are devoted to this allegedly unlawful arrest and issues allegedly arising therefrom.

looking in his windows. The police asked Mr. Elliott to call the next time the car showed up.

Finally, on the night of October 1, 1971, Mr. Elliott reported the presence of the unoccupied car. Officers Henry and Hansel responded, parking their car near petitioner's. When he returned to his car they followed and stopped him. Henry approached the driver's side, showed his badge, and, since it was raining heavily at the time, asked the petitioner if he would go to the Sheriff's office with them. Petitioner reportedly responded that he would. Officer Hansel, at the right door, asked if he could ride with him and petitioner agreed. At this time, had petitioner Irwin refused, Officer Henry testified, he could have gone his own way.

When they reached the Sheriff's office the petitioner attempted to discard a paratrooper's knife as they were leaving the car. The effort was observed, the knife retrieved, and petitioner, after being informed of his constitutional rights, was questioned by Officer Hansel. The knife, meantime, was identified as one previously reported stolen. At that point, Hansel testified, petitioner would not have been free to leave and he was told, somewhat later, that he would be booked on a burglary charge.

■ It is pertinent to observe at this point that under the statute, 28 U.S.C. § 2254(d) (1966),[9] it is provided that the state court determination of a factual issue "shall be presumed to be correct" unless the petitioner establishes one of the enumerated, (1) to (8), exceptions which proves the unreliability of the state proceeding.[10]

9. Section 2254(d) provides:

(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determi-

nation of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.

10. A federal district court may rely upon the findings of fact of a state court if the federal court has examined the pertinent transcript of proceedings before the state court and has assured itself that they are fair. Here the District Court found that "the State's factual determinations are fairly supported by the record." *See, e. g. Winford v. Swenson,* 517 F.2d 1114 (8th Cir. 1975); *Dyer v. Wilson,* 446 F.2d 900 (9th Cir. 1971); *Selz v. California,* 423 F.2d 702 (9th Cir. 1970); *United States ex rel. Worlow v. Pate,* 411 F.2d 972 (7th Cir.

The initial stop, accurately characterized by the Nebraska court as investigatory, was clearly warranted upon the facts found.[11] Such stop did not constitute an arrest,[12] nor did the ride with the officer to the station for questioning, in view of its voluntary nature.[13] It is equally clear upon the record that the arrest, which occurred after the paratrooper's knife was discovered and identified, rested upon ample probable cause.[14]

The petitioner also urges to us that "[t]he commitment [to the State Penal and Correctional Complex for an indefinite period of time] is a violation of the Defendant's constitutional rights." No further specification is made as to just where the Act fails, constitutionally, but apparently the petitioner's theory is that he is subjected to cruel and unusual punishment "in that Appellant is left in a state of limbo not knowing when, if ever, he may be released, sentenced by the Trial Court, or rehabilitated."

We will construe the charge liberally and examine both procedural and substantive due process under the Act. Procedurally,

> Due process, * * *, requires that he be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own. And there must be findings adequate to make meaningful any appeal that is allowed.[15]

The Nebraska Act requires that before a defendant may be committed thereunder he must be afforded a trial by jury,[16] at which the burden of proof is on the State to prove the elements involved beyond a reasonable doubt.[17] We are cited to, and find no procedural infirmity in the initial commitment under the Act.[18]

1969), *after remand,* 437 F.2d 909 (7th Cir.), *cert. denied,* 403 U.S. 921, 91 S.Ct. 2238, 29 L.Ed.2d 699 (1971); *United States ex rel. Thomas v. Maroney,* 406 F.2d 992 (3d Cir. 1969); *cf. In re Parker,* 423 F.2d 1021, 1024 (8th Cir.), *cert. denied,* 398 U.S. 966, 90 S.Ct. 2182, 26 L.Ed.2d 551 (1970).

11. *Adams v. Williams* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *United States v. Stevens,* 509 F.2d 683 (8th Cir.), *cert. denied* 421 U.S. 989, 95 S.Ct. 1993, 44 L.Ed.2d 479 (1975); *United States v. Wickizer,* 465 F.2d 1154, 1156 (8th Cir. 1972); *United States v. Harflinger,* 436 F.2d 928 (8th Cir. 1970), *cert. denied* 402 U.S. 973, 91 S.Ct. 1660, 29 L.Ed.2d 137 (1971).

12. *Compare United States v. Stevens, supra, and United States v. Sanchez,* 450 F.2d 525 (10th Cir. 1971), *with Henry v. United States,* 361 U.S. 98, 103, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959).

13. *See Sibron v. New York,* 392 U.S. 40, 63, 88 S.Ct. 1868, 20 L.Ed.2d 17 (1968).

14. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *United States v. Peep,* 490 F.2d 903, 906–907 (8th Cir. 1974). *See also Brinegar v. United States,* 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *Kelley v. Swenson,* 510 F.2d 264 (8th Cir. 1975).

This Court recently reiterated the standard ·to be applied to the issue of probable cause in *United States v. Peep,* 490 F.2d 903, 906–907 (8th Cir. 1974).

> We assess probable cause in terms of the eyes of a reasonably cautious and prudent peace officer in the circumstances of the moment. . . . Probable cause to arrest depends "upon whether, at the moment the arrest was made, * * * the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). . . . And in making this assessment we do not isolate for independent analysis each factual circumstance, but rather we view the action of the arresting officers on the basis of the cumulative effect of such facts in the totality of the circumstances. . . . (Citations omitted.)
> *See also United States v. Buckhanon,* 505 F.2d 1079, 1081 (8th Cir. 1974).
> *Kelley v. Swenson, supra* at 267.

15. *Specht v. Patterson,* 386 U.S. 605, 610, 87 S.Ct. 1209, 1212, 18 L.Ed.2d 326 (1967).

16. Neb.Rev.Stat. § 29–2903(2) (Cum.Supp. 1974).

17. Neb.Rev.Stat. § 29–2904 (Cum.Supp.1974).

18. See, generally, *Developments in the Law— Civil Commitment of the Mentally Ill,* 87 Harv. L.Rev. 1190 (1974). *See also In re Ballay,* 157 U.S.App.D.C. 59, 482 F.2d 648 (1973).

█ With respect to the commitment under the Act and its duration, the period of commitment is not, per se, an indication of cruel and unusual punishment. As was held in *Jackson v. Indiana,* 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435 (1972):

> At the least, due process requires that the nature and duration of the commitment bear some reasonable relation to the purpose for which the individual is committed.

Under the terms of the Nebraska Act a "sexual sociopath" is a person who has been convicted of a sexual offense and who (under the prescribed procedures) is "determined to be disposed to repeated commission of sexual offenses which are likely to cause substantial injury to the health of others."[19]

The Nebraska Act received comprehensive analysis by the highest court of the State on direct appeal of the case before us.[20] It was there held in part as follows:

> The Nebraska Act provides, as we have noted, that if the defendant is determined to be a sexual sociopath and further determined that he cannot be benefited by treatment, he shall be committed to the Nebraska Penal and Correctional Complex for an indefinite period. § 29–2903(3), R.S.Supp., 1972. The question of whether he remains a sexual sociopath is subject to review at yearly intervals either on motion of the defendant or on the court's own motion. § 29–2906(2), R.S.Supp., 1972. This review under the provisions of the Act is subject to the same due process safeguards which pertain to the initial commitment. §§ 29–2906(2) and 29–2902(2) to (7), R.S.Supp., 1972. * * * Continuing commitment under the Act depends upon a finding that the defendant is still a sexual sociopath, i. e., "disposed to repeated commission of sexual offenses which are likely to cause substantial injury to the health of others." §§ 29–2901 and 29–2906(2), R.S.Supp., 1972.

The Act provides that if the defendant on one of these reviews is determined no longer to be a sexual sociopath the court may "sentence the defendant on the original sex offense or release the defendant on probation." § 29–2906(3), R.S.Supp., 1972.

191 Neb. at 196–197, 214 N.W.2d at 610–611.

It was further held, with respect to the indefinite commitment complained of by petitioner that:

> [T]he indefinite commitment authorized serves two functions. The first, the protection of society and the second, punishment. The commitment and the sentence must be reasonably related to those ends. We hold that when and if the defendant is found to be no longer a sexual sociopath any sentence which the court may impose for the original conviction may not exceed the maximum sentences for rape less any time the defendant has been committed under the present order for indefinite commitment. Stated in another way, we hold that under the Act a defendant may not be confined for a period longer than the longer of the following: (1) The period during which he remains a sexual sociopath, or (2) the maximum term or terms authorized for the crime of which he was convicted and which triggered the initial indefinite commitment.

191 Neb. at 197–198, 214 N.W.2d at 611.

█ The provisions of the Act, and the construction placed thereon by the State's highest court, do not, in our judgment, warrant its characterization as involving "cruel and unusual punishment" as that term is constitutionally employed. We find the charge made without merit.

We have reviewed the record with care concerning all of the allegations made in the light of the provisions of 28 U.S.C. § 2254. The petitioner has established none of the enumerated exceptions. The grounds raised, and con-

---

**19.** Neb.Rev.Stat. § 29–2901 (Cum.Supp.1974).

**20.** *State v. Irwin, supra; see also State v. Madary,* 178 Neb. 383, 133 N.W.2d 583 (1965).

sidered by the District Court, were properly rejected by it, and, as adjudicated by the state courts, did not deny petitioner's constitutional rights.[21]

With respect to the final aspect of the matter before us, in *Davis v. Fugitive Officer, et al.,* No. 75–1764 (8th Cir., filed Dec. 11, 1975), we ordered as follows:

[W]e note that the judgment of dismissal was not entered on a separate document as required by Rule 58, Fed. R.Civ.P. This inexcusable omission has occurred all too frequently and we have dismissed appeals because of failure to comply with Rule 58. In this case, however, we choose to dispose of the appeal on the merits. Because the notice of appeal would have been timely filed had judgment been properly entered, and because the complaint clearly fails to state a claim for relief, neither party is prejudiced by our doing so.

We therefore partially remand the cause with directions to the district court to forthwith enter a judgment of dismissal on a separate document nunc pro tunc, as of the date the district court dismissed the action. The district court is empowered to issue such a nunc pro tunc order. *See Matthies v. Railroad Retirement Board,* 341 F.2d 243 (8th Cir. 1965); 6A J. Moore, Federal Practice ¶ 58.08–58–306.

A copy of the judgment entered nunc pro tunc in accordance with this order shall be filed in the office of the clerk of this court.

The Order quoted is equally applicable to, and shall be followed in, the case *sub judice.* Upon compliance therewith, we affirm.

---

**21.** Additional issues ruled upon by the Supreme Court of Nebraska and considered by us herein were the meritless claims of denial of the right to counsel, of the use of an involuntary confession, and the denial of motion for change of venue.