The State of Ohio, Appellee, *v.* Abner, Appellant.

(No. 32114—Decided November 1, 1974.)

*Mr. John T. Corrigan,* for appellee.
*Mr. James D. London,* for appellant.

DAY, J. Defendant-appellant Will Abner (defendant) was arrested on February 13, 1970, and subsequently indic-

ted on two counts of violation of Ohio Revised Code, §2903.-01.[1] On April 27, 1970, the State *nolled* the first count and defendant pled guilty to the lesser included offense in the second count known in street parlance as indecent exposure (Tr. 7, Hearing of April 27, 1970). At the time of defendant's plea, Ohio Revised Code, §2947.25 (Ascherman Act) required that persons either convicted of, or pleading guilty to offenses under Ohio Revised Code, §2903.01, *inter alia,* be referred to designated authorities for examination of the person's mental condition. Defendant was examined as required and on August 11, 1970, returned to the trial court for sentencing.

A hearing pursuant to Ohio Revised Code, §2947.25 was had and defendant was found to be a "psychopathic personality." The trial judge then sentenced defendant to the Ohio State Penitentiary, suspended sentence and ordered defendant committed to Lima State Hospital for treatment (Tr. 13-14, Hearing of August 11, 1970).

On October 14, 1971, defendant again was returned to the same trial court[2] for a hearing pursuant to Ohio Revised Code, §2947.27 (Tr. 2, Hearing of October 14, 1971). Defendant was denied probation and ordered to the Ohio State Reformatory at Mansfield to serve his sentence.[3]

---

[1]Ohio Revised Code, §2903.01 under which defendant was charged has been repealed, H. B. 511, eff. January 1, 1974. At the time of defendant's prosecution the statute read:

"No person over the age of eighteen years shall assault a child under the age of sixteen years, and willfully take indecent and improper liberties with the person of such child, without committing or intending to commit the crime of rape upon such child, or willfully make improper exposures of his person in the presence of such child.

"Whoever violates this section is guilty of felonious asault [sic] and shall be fined not less than one hundred nor more than one thousand dollars or imprisoned not less than one nor more than ten years, or both."

[2]It is assumed the reason for defendant's return at this time was because he was found by the Superintendent at Lima "to have improved to such extent that he no longer needs the special custody, care or treatment of . . . ." Ohio Revised Code, §2947.27. However, the record does not reflect the Superintendent's findings, if any.

[3]During the hearing this colloquy ensued:

"The Court: Well, there is nothing I can do on the basis of

Defendant appeals assigning three errors:

"I. Because the Ascherman Act is on its face, and as applied to appellant, unconstitutional any and all reference with regard to appellant's commitment to Lima State Hospital should be expunged from the official records of the State of Ohio.

"II. The State at the probation hearing below did not meet the burden of proof imposed upon it by the treatment rationale of the Ascherman Act to justify the Court's failure to grant appellant probation.

"III. Appellant was denied equal protection of the laws as guaranteed by the Fourteenth Amendment as significant differences exist between commitment and release under Ohio Revised Code §§2947.24-.29 (1969) and civil commitment, Ohio Revised Code §5922.11-.16, .27 (1973). [*sic*]"

All three assignments of error lack merit.

I.

Assignment of Error No. I:

"Because the Ascherman Act is on its face, and as applied to appellant, unconstitutional any and all reference with regard to appellant's commitment to Lima State Hospital should be expunged from the official records of the State of Ohio."

---

this report. I will sentence you to the Ohio State Reformatory and give you credit for the time spent in County Jail from September 10 [1971]. (Bracketed material supplied.)

"Mr. Wuliger: Your Honor, is it possible to give him credit from the time he entered his plea?

"The Court: I can only give him time from County Jail, about a month, and then he would be eligible before the Board in about eight months.

"Mr. Wuliger: Thank you, sir."

* * * *

It is noted that Ohio Revised Code, §2947.27 specifically provides:

"For the purposes of reckoning the eligibility of such person for parole or discharge, the time of confinement under an order of indefinite commitment in accordance with such section, shall be counted as time served with good behavior under the applicable sentence."

No doubt the Adult Parole Authority knows and will exercise its statutory powers.

## A.

Under this assignment defendant argues first that the Ascherman Act is unconstitutional because it denies due process of law. In lower terms this argument is based on two assumptions. These are that Ascherman commitments affront process by failing to provide a jury trial[4] for the hearing on the examination report contemplated by the Act (Ohio Revised Code, §2947.25) and that Ascherman is void for vagueness because its definitions of psychopathic personality are overbroad.

These contentions lack substance. The due process jury trial required in *Duncan* v. *Louisiana* (1968), 391 U. S. 145, 20 L. Ed. 2d 491, involved both an initial determination of the facts related to guilt and an adversary proceeding. Defendant Abner had a right to a jury trial in an adversary proceeding for the initial determination of his guilt. His plea of guilty waived that right. Defendant relies on *Baxstrom* v. *Herold* (1966), 383 U. S. 107, 15 L. Ed. 2d 620, and *Specht* v. *Patterson* (1967), 386 U. S. 605, 18 L. Ed. 2d 326. The facts in the instant case, when contrasted with the *Baxstrom* and *Specht* facts, demonstrate why neither provides authority for his contentions.

The defendant in *Baxstrom* was civilly committed *after* the expiration of his criminal sentence without the jury determination vouchsafed by the New York statutes to persons civilly committed whether such persons had past criminal records or not. Having satisfied his obligations for his criminal infraction his posture vis-a-vis further commitment was comparable to that of a person subjected to civil commitment, *Baxstrom* v. *Herold*, 383 U. S. at 111-112; 15 L. Ed. 2d at 624. Moreover, the New York legislature had created "functionally distinct institutions" for persons civilly hospitalized and those institutionalized, as Baxstrom was, after expiration of a criminal term. Civil commitments were under the jurisdiction of the Department of

---

[4]See *State* v. *Ross* (1954), 96 Ohio App. 157, 163-164, on the constitutionality of predecessor statutes, cf. *In re Latham* (1958), 168 Ohio St. 14.

Mental Hygiene while postconviction commitments involved hospital facilities under the control of the Department of Corrections. Such differences reflect distinctions not compatible with equal protection of the law. The Supreme Court held precisely that in *Baxstrom*.[5]

In *Specht* v. *Patterson,* 386 U. S. at 606, 18 L. Ed. 2d at 328, the Supreme Court first reaffirmed its holding in *Williams* v. *New York* (1949), 337 U. S. 241, 93 L. Ed. 1337, the latter being a case in which a penalty was fixed at the end of the trial in the same proceeding at which guilt was determined.[6] The *Specht* court said of its decision in *Williams*:

"We held . . . that the Due Process Clause of the Fourteenth Amendment did not require a judge to have hearings and to give a convicted person an opportunity to participate in those hearings when he came to determine the sentence to be imposed." 386 U. S. at 606, 18 L. Ed. 2d at 328.

The court went on to rule that *Specht* had been denied due process when he was sentenced without a hearing or confrontation under the Colorado Sex Offenders' Act. But that statute provided a sentence far harsher than the maximum under the statute of his conviction. These considera-

---

[5]Defendant also cites *Humphrey* v. *Cady* (1972), 405 U. S. 504, 31 L. Ed. 2d 394 on the justification for a jury trial before confinement for compulsory treatment. *Cady* is distinguishable on its facts from the present case. That case involved commitment after expiration of the time of the maximum sentence had expired and the state successfully sought an order renewing Humphrey's commitment for five years without a jury trial. The Supreme Court of the United States remanded for a determination, *inter alia,* whether the procedure did not involve equal protection issues because by contrast, the State's civil commitment process provided for a jury trial. *Jackson* v. *Indiana* (1972), 406 U. S. 715, 32 L. Ed. 2d 435, is also inapposite because in *Jackson* the Supreme Court found an equal protection violation where an accused found incompetent to stand trial was ordered committed until certified sane, 406 U. S. at 717-719, 32 L. Ed. 2d at 439-440, under a "more lenient commitment standard and . . . a more stringent standard of release" than those applied to all others committed when not charged with crime, 406 U. S. at 729-730, 32 L. Ed. 2d at 446. (The Lawyers Edition report omits the words "more lenient.")

[6]The *Williams* case involved judicial discretion to fix a death penalty after a jury recommendation of mercy. The judge imposed the penalty of death for reasons of background information available to him.

tions clearly distinguish *Specht* from the present case in which the Ascherman processes were part of the sentencing alternatives provided in the procedures following a plea. Moreover, the medical conclusions generated by the Ascherman process were subject to testing in a hearing coupled with compulsory process, Ohio Revised Code, §2947.25.

Obviously, the principle from the *Williams* case, *id.*, has more relevance to the instant case than do the rules enunciated in *Baxstrom, Specht, Cady,* or *Jackson.*

Defendant's void for vagueness assertions under his first assignment of error are couched in traditional terms. The vice in the Ascherman Act vagueness, he seems to suggest, lies in the "treachery" concealed "either in determining what persons are included or what acts are prohibited," citing *United States* v. *Cardiff* (1952), 344 U. S. 174, 73 S. Ct. 189, 79 L. Ed. 200.*

The weakness of defendant's vagueness claim lies in his failure to distinguish between that doctrine's applicability to criminal conduct where proscriptions require precision and its lack of relevance to medical standards in sentencing alternatives. In this case there is no assertion that the proscribed criminal conduct was too vague to satisfy constitutional requirements. Rather the defendant takes aim at the overbreadth of medical terms in the Ascherman Act.'

Perhaps the defendant could mount a tenable claim against the medical terms were he to contend that they were so general that no application of them by medical science were possible. However, he makes this point only in terms of a claimed diversity of medical opinion with respect to the definition of psychopath. Assuming this problem exists, it is not concerned with a standard to which a sick defendant is expected to conform.** Moreover, the claim of medi-

---

*The Lawyers Edition citation is incorrect.

'But see *Minnesota, ex rel. Pearson,* v. *Probate Court* (1940), 309 U. S. 270, 84 L. Ed. 744, in which the court rejected a vagueness challenge to a Minnesota statute authorizing involuntary civil commitment of persons exhibiting a "psychopathic personality" in sexual matters.

**Overbreadth may have a slightly different reach than vagueness. The two may run into each other on occasion but the characteristic

cal nebulosity has no support in the evidence. Granting the desirability of medical certainty, a commendable fever for reform cannot fill gaps in the record.

The void for vagueness contention founders on both theoretical and factual grounds.

### B.

Another phase of the defendant's due process attack on the Ascherman Act under this first assignment of error is his contention that the Ascherman Act was applied in an unconstitutional manner.

Defendant poses his objections in terms of an adversary proceeding. He is in error in his assumption that Ascherman Act examinations are adversary in nature.[8] On the contrary, the proceedings are part of the sentencing alternatives. Moreover, the record reflects that the Court was responding to the request of defendant's counsel (although it was also fulfilling a statutory obligation) in ordering the examination under Ohio Revised Code §2947.25. That same record will support an inference of understanding by the defendant that the examination was part of the sentencing process (Tr. 7-9). Under these conditions the "notice" issue is inconsequential.[9]

---

peculiar to overbreadth is an unnecessarily broad regulatory sweep which moves the state from constitutional action into protected areas of freedom. Cf. *NAACP* v. *Alabama* (1964), 377 U. S. 288, 307, 12 L. Ed. 2d 325, 338.

[8] Query, whether post-conviction psychological and psychiatric examinations are civil, non-accusatorial proceedings, non-penal in nature which do not expose an accused to criminal liability? See *Wise* v. *Director, Patuxent Institution* (1967), 1 Md. App. 418, 230 A. 2d 692; *Nebraska* v. *Madary* (1965), 178 Neb. 383, 133 N. W. 2d 583; *People* v. *Chapman* (1942), 301 Mich. 584, 4 N. W. 2d 18. See *Goetsch* v. *State* (1969), 45 Wis. 2d 285, 293-294, 172 N. W. 2d 688, 692, where the state's burden of proving that a sex deviate needed specialized treatment was held to be satisfied by proof sufficient "to satisfy the court to a reasonable certainty by the *greater weight of the credible evidence.*" (Emphasis added.)

[9] Assuming that defendant's claim of denial of due process based on failure to receive the warnings required by *Miranda* v. *Arizona* (1966), 384 U. S. 436, 16 L. Ed. 2d 694, is anything more than make weight, the claim is refuted by the fact that the post-conviction psychological

The defendant's remaining claims have a place in proceedings determining guilt but not in a medical examination preliminary to sentencing. Confrontation and cross-examination and related rights have small purchase during psychiatric procedures. See *United States* v. *Albright* (4th Cir., 1968), 388 F. 2d 719. However, the reports elicited by such procedures are available to the defense under the Ascherman Act (Ohio Revised Code, §2947.25) at a hearing on the report. At that time, under the statute the defendant is vouchsafed counsel, subpoena powers, examination and cross-examination of the examiners making the report and the right to produce both lay and expert witnesses on the defendant's mental condition. These provisions provide safeguards against the abuse of the medical procedures allowed under the Act.[10] It is significant that defendant had competent and alert counsel who did not see fit to invoke all the rights available under the statute.

None of the defendant's attacks on the Ascherman Act under his first assignment of error have merit. This conclusion disposes of his request to have his commitment record expunged.

## II.

Assignment of Error No. II:

"The State at the probation hearing below did not meet the burden of proof imposed upon it by the treatment rationale of the Ascherman Act to justify the Court's failure to grant appellant probation."

The section of the Ascherman Act [Ohio Revised Code, §2947.27 (A)] relevant to this assignment provides:

---

and psychiatric procedures are not part of the accusatorial process. See *Wise* v. *Director, Patuxent Institution* (1967), 1 Md. App. 418, 421-422, 230 A. 2d 692, 694; *State, ex rel. Fulton,* v. *Scheetz* (S. Ct. Iowa, 1969), 166 N. W. 2d 874, 891.

[10]Comparable safeguards are imposed both for the initial hearing after sentencing and for the hearing under Ohio Revised Code, §2947.27 when a defendant indefinitely committed after sentence [Ohio Revised Code, §2947.25(B)] is reported improved "to such an extent" that he no longer needs the "special custody, care, or treatment" contemplated by the commitment.

"(A) Except for those persons disqualified for probation under section 2951.04 of the Revised Code, where the court finds that the character of the defendant and his recovery and the circumstances of the case are such that he is not likely again to engage in an offensive course of conduct and that the public good does not demand or require that the original sentence be carried out, the judge may suspend the further execution of the sentence and place the defendant on probation in accordance with the provisions of section 2951.02 to 2951.12, inclusive, of the Revised Code."

The defendant challenges the application of the section to him. He asserts that upon his release from the hospital the trial court was required to reach negative conclusions on the factors enumerated in the statute to justify placing him in a penal institution under the original sentence rather than granting probation. In addition, the defendant argues the state has the burden of proving beyond a reasonable doubt that those factors existed which justify carrying out the original sentence.

These arguments ignore the essential nature of the power conferred by Ohio Revised Code, §2947.27(A). That section confers discretion on the trial court. Such discretion[n] is not limited by burden of proof considerations. Nor is there any basis for an attack upon the trial court's exercise of its powers under the statute except and unless it is demonstrated on the record that the court abused its discretion. An example of such an abuse would be a failure or refusal to review and consider "the findings and recommendations of the coordinator and the reports of the superintendent" or "evidence offered at the hearing and any written report of investigation made by the probation officer in accordance with section 2951.03 of the Revised Code..." Ohio Revised Code, §2947.27. There may be other examples of abuse. No instances are exemplified in the evidence in this case.

The record is exceptionally skimpy. However, it shows

---

[n]For a discussion of the scope of judicial discretion in probation decisions see *In re Reed* (1969), 21 Ohio App. 2d 1, 4.

that the court remarked at the October 14, 1971, hearing: "Well, there is nothing I can do on the basis of this *report*" (Tr. 4). (Emphasis added.) Counsel was present, offered no evidence, raised no objections, and did not challenge the court's conclusion. Under these circumstances the presumption of regularity attendant upon official judicial action supports the trial court action. Beyond this, the report to which reference was made is not in the record here.[12] Consequently, we are unable to essay a review of the trial court's discretionary action even in those narrow circumstances which would warrant oversight to determine whether discretion has been abused.

Defendant's second assignment of error is without merit.

### III.

Assignment of Error No. III:

"Appellant was denied equal protection of the laws as guaranteed by the Fourteenth Amendment as significant differences exist between commitment and release under Ohio Revised Code §2947.29 (1969)[13] [*sic*] and civil commitment, Ohio Revised Code §5922.11-.16, .27 (1963) [*sic*]."[14]

In effect this assignment bases its challenge on the proposition that the differences between procedures for involuntary commitment for treatment and release under the Ascherman Act (after criminal conviction) and involuntary commitment and release under the Hospitalization of the Mentally Ill Act (civil commitment) constitute distinctions without relevant connection to different purposes sufficient to support the conclusion that reasonable classifications are involved. The defendant argues that because the two procedures are aimed at identical objectives, there is no justification for procedural differences. He concludes that the differences violate the right to Equal

---

[12]The trial court said it had "received a communication and the Defendant was ordered returned under Section 2947.27" (Tr. 2, Hearing of October 14, 1971). From this we infer that the report in issue was one provided in Ohio Revised Code, §2947.27.

[13]Ascherman Act.

[14]Hospitalization of the Mentally Ill Act.

Protection of the law (U. S. Constitution, Amendment XIV).

Assuming identical objectives for the two statutes, Equal Protection may be violated if differences in *commitment procedure* or differences in *commitment standards* discriminate against classes of persons without a reasonable justification inherent in the purposes of the classification. A basic issue in determining constitutional procedure and constitutional standards is fairness. Procedures or standards may differ without violating Equal Protection or Due Process if the procedures and standards are fair and relate to a relevant purpose in establishing the class. See *Baxstrom* v. *Herold,* 383 U. S. at 111, 15 L. Ed. 2d at 624.

A comparison of Ohio Revised Code, §2947.24-.29 (Ascherman Act) and Ohio Revised Code, §5122.11-.16, .27 (Hospitalization of the Mentally Ill Act, i. e., civil commitment) shows the two acts share the objective of treating the mentally ill but the Ascherman Act goes beyond this to reach the "mentally retarded" and "psychopathic" offender defined in Section 2947.24.[15] Both acts provide for a commitment hearing on the medical evidence. However, the Ascherman Act, under which the present defendant was committed, allows in terms an opportunity to present evidence, to examine and cross-examine witnesses, and access to compulsory process. Both procedures include the right to counsel.[16] On the matter of release there are differences but the

---

[15]Section 2947.25 incorporates the definition of "mentally ill" as defined in Section 5122.01 and the hospitalization provided by Section 5122.15. After the original Ascherman proceedings involving the present defendant, both Acts were amended. However, the changes were either very slight or unrelated to the issues here. In either event, the alterations do not affect the analytic conclusions in the text of this opinion.

[16]Cf. Ohio Revised Code, §§2947.25 and 5122.15. Civil commitment procedure under Section 5122.15 now requires counsel if requested or the subject is unable at the time to understand his rights. *In re Fisher* (1974), 39 Ohio St. 2d 71, 75-80. The present defendant had counsel at the hearings involved in his commitment and release procedure. The record does not show counsel present during his medical examina-

effect of the procedures under both statutes is to provide safeguards to insure periodic review of the continuing need for commitment although the procedures are not identical." There is no indication that different standards for commitment or release are involved. Basically, the standards in each statute provide for termination of hospitalization when the service is no longer required.[18]

The comparison reveals no invidious discrimination. Therefore, there is no occasion to decide whether there are differences between commitments after conviction and civil commitments of persons with no criminal history which provide a reasonable basis for different procedures and standards for involuntary hospitalization and release. In any event, equal protection concepts do not prohibit reasonable classifications to facilitate permissible police power objectives.

Under these circumstances we find that the third assignment of error is without merit.

The judgment of the court below is affirmed.

*Judgment affirmed.*

CORRIGAN and WASSERMAN, JJ., concur.

WASSERMAN, J., retired, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.

---

tion, cf. *id.* at 82. We find no Ohio case allowing or requiring counsel during a medical examination. There are courts which take a dim view of the presence of counsel at a psychiatric examination. *United States* v. *Albright* (Cir. 4, 1968), 388 F. 2d 719, 726. At best counsel's presence is a matter of judicial discretion. *State* v. *Whitlow* (1965), 45 N. J. 3, 28, 210 A. 2d 763, 776.

[17]Cf. Ohio Revised Code, §5122.21 and §2947.27, and as amended effective July 12, 1972.

[18]Cf. Ohio Revised Code, §5122.19, .21, and §2947.27, and as amended effective July 12, 1972.