THE STATE OF OHIO, APPELLEE, *v.*
AHEDO, APPELLANT.

(Nos. 46693 and 46694—Decided
January 30, 1984.)

*Mr. John T. Corrigan,* prosecuting
attorney, for appellee.

*Mr. L. James Juliano,* for appellant.

DAY, J. Defendant-appellant Raynaldo Ahedo ("defendant") appeals his conviction and sentence for aggravated robbery (R.C. 2911.01) and rape (R.C.

2907.02) in Cuyahoga County Common Pleas case No. 39755.[1]

For the reasons adduced below, the judgment of conviction is affirmed and the case is remanded for re-sentencing.

I

Defendant was sixteen years old at the time he was charged in the Juvenile Division, Court of Common Pleas, Cuyahoga County, Ohio, with six counts of aggravated robbery, one count of aggravated burglary, and one count of rape. He was bound over to the adult court after a transfer hearing. On June 28, 1978, he was indicted on all eight counts. The indictments alleged that the offenses specified in counts one and two were perpetrated on March 9, 1978; those of counts three, four, five, and six on April 2, 1978; and those of counts seven and eight on April 6, 1978. Count three of the indictment alleged aggravated robbery and count eight, rape.

On July 26, 1978, the defendant entered a guilty plea to counts three and eight of the indictments. The remaining counts were nolled. Before accepting the plea the trial court granted a motion by the state to amend the date of the offense alleged in count eight. The Ascherman Act (R.C. 2947.24 to 2947.29), at all relevant times before the date of sentencing in this case, required that anyone convicted of rape undergo psychiatric examination before being sentenced (R.C. 2947.25). The court referred the defendant for examination and continued the case pending completion of the psychiatric report. On October 23, 1978, the court conducted a hearing on the report. The case was continued until November 1, 1978 for sentencing.

---

[1] On appeal, common pleas case No. 39755 was given court of appeals case No. 46694. That case was initially consolidated with defendant's appeal from common pleas case No. 44437, court of appeals case No. 46693. In his appellate brief, however, defendant abandons his appeal of common pleas case No. 44437 and pursues the appeal of common pleas case No. 39755 only.

On November 1, 1978, the trial court found the defendant to be a psychopathic offender under R.C. 2947.25. The trial court also found that on that same day Am. Sub. H. B. 565 took effect, repealing R.C. 2947.24 to 2947.29. Apparently interpreting the repeal as removing the obligation to follow the Ascherman Act procedures, the court sentenced the defendant to Mansfield Reformatory for consecutive terms of four to twenty-five years for aggravated robbery and five to twenty-five years for rape. Had the Ascherman Act governed, the finding that the defendant was a psychopath would have triggered R.C. 2947.25(E). That section mandated that the court either:

"(1) Place the defendant on probation under sections 2951.02 to 2951.12 of the Revised Code; [or]

"(2) Impose the appropriate sentence for the offense of which the person was convicted. At the same time the court shall enter an order of indefinite commitment of such person to the department of mental health and mental retardation, during the continuance of which the execution of sentence shall be suspended. Thereupon such person shall be sent to an appropriate institution designated by the department. If the department, because of lack of facilities, fails to designate an appropriate institution, such person shall be sent to the institution to which he would have been sent had he not been adjudged mentally ill, a mentally retarded offender, or a psychopathic offender. * * *"

The defendant was granted leave to file a delayed appeal.

## II

Four errors are assigned:

### Assignment of Error No. I

"The court erred by allowing the prosecutor to amend the indictment and by failing to grant to appellant a reasonable continuance subsequent to the granting of the motion to amend as set forth in Crim. R. 7(D)."

### Assignment of Error No. II

"The court erred in accepting appellant's guilty plea in that appellant did not understand the consequences of his plea as required by Crim. R. 11(C)."

### Assignment of Error No. III

"The court erred in accepting appellant's guilty plea in that appellant received inadequate representation by counsel."

### Assignment of Error No. IV

"The court in delaying sentencing in the case so as not to sentence appellant under R.C. §2947.25 often referred to as the Ascherman Act [*sic*]."

## III

The first assignment challenges the propriety of the amendment of the indictment after the pleas.

Crim. R. 7(D) provides in part:

"The court may at any time before, during, or after a trial amend the indictment, information, complaint or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. * * *"

This means a trial court may not amend an indictment to supply an essential element of the crime. *State* v. *Headley* (1983), 6 Ohio St. 3d 475, 478-479; *State* v. *Radebaugh* (1982), 5 Ohio App. 3d 152, 155-156.

Clearly, the date of the alleged offense is not an essential element of the crime. Nor does it involve the name or identity of the crime charged. Cf. *State* v. *Herrin* (1982), 6 Ohio App. 3d 68, 68-69. The defendant's decision to plead guilty to count eight was made before the amendment to the indictment. However, the defendant fails to demonstrate

any prejudice resulting from that circumstance.

Assignment of Error No. I lacks merit.

## IV

Assignment of Error No. II asserts defendant's misapprehension of the consequences of his plea.

The record flatly contradicts that assertion. For it discloses scrupulous adherence to Crim. R. 11(C) and the spirit of *State* v. *Stone* (1975), 43 Ohio St. 2d 163, 167-171 [72 O.O.2d 91].

Assignment of Error No. II is wholly without merit.

## V

Assignment of Error No. III rests on the premise that the failure of trial counsel to object to the amendment of the indictment or to move for a continuance amounts to inadequate representation.

For the reasons advanced in the disposition of Assignment of Error No. I, the argument fails. Even if trial counsel had preserved his objection to the amendment or moved for continuance and been overruled, allowance of the amendment was permissible.

Assignment of Error No. III lacks merit.

## VI

Assignment of Error No. IV suggests the trial court delayed sentence in a deliberate effort to avoid the mandates of the Ascherman Act. The pejorative implications of that conclusion need not

be reached. However, the fact is that the trial court applied a penal statute effective on November 1, 1978 to a criminal act committed months before that date.[2] This implicates the constitutional doctrine forbidding *ex post facto* laws.[3] The Ex Post Facto Clause of the federal Constitution has been interpreted to forbid "any statute which punishes as a crime an act previously committed, which was innocent when done; [or] which makes more burdensome the punishment for a crime, after its commission * * *." *Beazell* v. *Ohio* (1925), 269 U.S. 167, 169. A clause in the Ohio Constitution, Section 28, Article II, has purposes which parallel the federal objectives. *Blackburn* v. *State* (1893), 50 Ohio St. 428, 438; cf. *State, ex rel. Corrigan,* v. *Barnes* (1982), 3 Ohio App. 3d 40, 44.

The policy underpinning the *ex post facto* prohibition is that:

"[T]he criminal quality attributable to an act, either by the legal definition of the offense or by the nature or amount of the punishment imposed for its commission, should not be altered by legislative enactment, after the fact, to the disadvantage of the accused." *Beazell, supra,* at 170.

"The Constitution forbids the application of any new punitive measure to a crime already consummated, to the detriment or material disadvantage of the wrongdoer." *Lindsey* v. *Washington* (1937), 301 U.S. 397, 401.

To determine whether a new statutory sentencing procedure is more onerous than a prior one, the two pro-

---

[2] The record shows:

"[T]he Trial Court has delayed sentencing in this case in the belief that it would be more appropriate to sentence under the new provisions than under the old.* * *"

[3] Section 10, Article I, United States Constitution; Section 28, Article II, Ohio Constitution.

The defendant also relies on R.C. 2929.61 (C), effective July 1, 1983, to support his con-

tention that the applicable punishment statute should be that one in effect at the time the offense was committed. By its express terms subsection (C) of that statute relates only to third and fourth degree felonies committed on or after January 1, 1974, and before January 1, 1983. The defendant here pleaded guilty to first degree felonies. The statute is inapplicable.

cedures are to be compared *"in toto."* *Dobbert* v. *Florida* (1977), 432 U.S. 282, 294.

However, it is unnecessary to detail every feature of the Ascherman Act to demonstrate the differences wrought on the defendant's sentence by Am. Sub. H. B. 565. Under the procedure permissible after Am. Sub. H. B. 565, the defendant received nine to fifty years incarceration in prison. Under the Ascherman Act, either he could have been placed on probation, or his sentence could have been suspended coupled with an indefinite commitment to the Ohio Department of Mental Health and Mental Retardation. That agency would have sent the defendant to an appropriate institution if available.[4] R.C. 2947.25(E).

Furthermore, the Ascherman provenance provided other advantages including annual reviews of the defendant's mental condition, remedial alternatives if the reviews were not forthcoming and ultimately the possibility of further court intervention by way of a hearing in the court that tried him. R.C. 2947.25, 2947.27, 2947.271. Among other possibilities, if the defendant were not drug dependent, the court could find:

"* * * [T]hat the character of the defendant and his recovery and the circumstances of the case are such that he is not likely again to engage in an offensive course of conduct and that the public good does not demand or require that the original sentence be carried out, [and] * * * suspend the further execution of the sentence and place the defendant on probation in accordance with the provisions of sections 2951.02 to 2951.12, inclusive, of the Revised Code." R.C. 2947.27(A).

These recitals do not describe all the alternatives under R.C. 2947.24 *et seq.,* but provide enough to demonstrate advantages for the defendant beyond any provided in simply arctic application of the sentencing statutes.

The objective of the Ascherman Act is, at least in theory, to provide for individualized therapeutic treatment of criminal offenders in need of care, rather than simply penal restraint. Cf. *State* v. *Abner* (1974), 43 Ohio App. 2d 141 [72 O.O.2d 355], 152-153; Geltner, A Modest Proposal to Amend Ohio's Post-Conviction Commitment Law (1973), 34 Ohio St. L.J. 527, 533. Indeed, the state of Ohio joined the stipulation in *Davis, supra,* at 876, that:

"[A]ll members of the patient population of LSH [Lima State Hospital] have a *constitutional* right to treatment, which encompasses a right to be placed in the least restrictive confinement, * * * "

Of course, not all legislative changes in criminal procedure violate the Ex Post Facto Clause. *Dobbert, supra,* at 293, citing *Beazell, supra,* at 171; *State* v. *Whitmore* (1933), 126 Ohio St. 381, 388-390. However,

"Just what alterations of procedure will be held to be of sufficient moment to transgress the constitutional prohibition cannot be embraced within a formula or stated in a general proposition. The distinction is one of degree. But the constitutional provision was intended to secure substantial personal rights against arbitrary and oppressive legislation, * * * and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance." *Beazell, supra,* at 171.

In a recent decision the United States Supreme Court recognized that in circumstances comparable to those in

---

[4] Presumably the defendant would have been sent to Lima State Hospital for treatment. See *Davis* v. *Balson* (N.D. Ohio 1978),

461 F. Supp. 842, 847-850, 873; cf. Caulfield, Ohio Commitments of the Mentally Ill Offender (1975), 4 Cap. U. L. Rev. 1, 32.

the instant case, an *ex post facto* transgression would occur. It said:

"[E]ven if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense." *Weaver* v. *Graham* (1981), 450 U.S. 24, 30-31.

*Weaver* further recognized that the *ex post facto* prohibition encompasses "punitive conditions outside the sentence." *Id.* at 32.

When the repeal of R.C. 2947.24 to 2947.29 removed the mandatory options imposed upon the sentencing court after a finding that the defendant was a psychopathic offender, something was lost to him. The displacement of the mandatory options by flat sentencing possibilities is onerous enough, standing alone, to warrant a finding that the *ex post facto* policies of the state and federal Constitutions are violated.

Assignment of Error No. IV is well-taken.

## VII

The sentences are vacated. In all other particulars the judgment is affirmed. The cause is remanded for re-sentencing in accordance with this opinion.

Sentences vacated, judgment affirmed in all other particulars and the cause remanded for re-sentencing.

*Judgment affirmed,*
*sentence vacated and*
*remanded for re-sentencing.*

PARRINO and VICTOR, JJ., concur.

VICTOR, J., retired, of the Ninth Appellate District, sitting by assignment in the Eighth Appellate District.