DECISION
Defendant-appellant, Anthony M. Moore, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to appellant's plea of guilty to one count of felonious assault in violation of R.C. 2903.11, a second degree felony. This court has previously granted appellant's motion to file a delayed appeal. State v. Moore (Sept. 26, 2000), Franklin App. No. 00AP-806, unreported (Memorandum Decision).
Appellant was indicted on November 10, 1999, in a one-count indictment for felonious assault alleging that on or about October 31, 1999, appellant "did knowingly cause serious physical harm to Pam Huffmen." The facts generally alleged were that appellant had repeatedly punched the victim, his girlfriend and mother of his three children, knocking out a front tooth, breaking her nose, and causing a deep laceration near her eye which required stitches.
Trial was originally set for December 17, 1999, and continued to January 18, 2000, at the state's request. Prior to trial, appointed counsel for appellant and the prosecution arranged a plea agreement under which appellant would plead guilty to one count of felonious assault in exchange for a recommendation of a four-year sentence. At the plea hearing, held on the scheduled trial date of January 18, 2000, appellant pled guilty to the indictment. Appellant's prior convictions, all for mis-demeanors, were noted, including a conviction for negligent assault in 1998, theft in 1995, a capias for failure to appear in 1995, and a failure to appear on recognizance in 1998. The trial court heard a statement of the facts presented by the prosecution, which in contradiction to the indictment, identified the victim as "Karen Lehman." No objection was made by defense counsel to this change in the name of the alleged victim. The court then engaged in a dialogue with appellant in order to ascertain the voluntariness of his plea. After answering a series of typical questions regarding his knowledge of the consequences of the plea, including both the potential maximum and recommended sentences, appellant requested a further continuance to prepare for trial. Due to the unexpected nature of appellant's request and the abrupt departure from the trend of the plea proceedings, the court recessed to allow counsel to discuss the matter. Upon returning from recess, the court denied appellant's request for a continuance and resumed its questioning of appellant in connection with the plea. Following appropriate affirmative responses from appellant, the court accepted appellant's plea of guilty and, pursuant to the joint recommendation, imposed a four-year sentence.
Appellant has timely appealed and brings the following four assignments of error:
FIRST ASSIGNMENT OF ERROR:
 The Trial Court Erred in Denying Mr. Anthony Moore's Request for a Continuance on the Date of Trial.
SECOND ASSIGNMENT OF ERROR:
 The Trial Court Erred in Accepting Mr. Anthony Moore's Plea, Under Circumstances Which Violate Ohio Crim. R. 11(C) (2).
THIRD ASSIGNMENT OF ERROR:
 Mr. Anthony Moore was Denied Effective Assistance of Counsel at the Trial Court Level in Violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the Federal Constitution, and Article 1, Sections 2, 9, 10
and 16 of the Ohio Constitution.
FOURTH ASSIGNMENT OF ERROR:
 The State's Failure to Disclose Evidence Favorable to the Accused, and Failure to Correctly Name the Victim in the Indictment and to Correct the Name by Seeking Amendment of the Indictment so that the Indictment Accurately Reflected the Alleged Victim's Name, and Failure to Provide the Victim's Correct Name in Discovery Materials Filed With the Court, Constitutes Prosecutorial Misconduct.
Appellant's first assignment of error asserts that the trial court erred in overruling his request for a continuance. The grant or denial of a continuance is entrusted to the sound discretion of the trial court. State v. Unger (1981), 67 Ohio St.2d 65, syllabus. The trial court's determination will thus not be reversed unless there has been an abuse of discretion. Id. The term abuse of discretion connotes more than a mere error of judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. State v. Adams (1980),62 Ohio St.2d 151, 157.
When appellant suddenly requested a continuance in the middle of the plea proceedings, his asserted reason was that he needed more time to prepare for trial. Appellant stated, "[i]f I want to get my people to testify, you tell me that I don't get a continuance, how am I going to get ahold of them to come and testify on my behalf?" (Tr. at 7.) We agree with defendant that it is a basic due process right that a defendant be afforded "the reasonable opportunity to prepare his case" for trial. State v. Broom (1988), 40 Ohio St.3d 277, 288. A reviewing court attempting to ascertain whether a defendant was prejudiced by a denial of a continuance must look at the facts of each case and the circumstances of the defendant in order to determine if prejudice has been shown. Id. In the present direct appeal, we are limited to the record before us. The only indication in the record tending to show prejudice would be appellant's statement at the plea hearing that he needed more time to obtain defense witnesses. However, the chronology of the case does not support a showing of prejudice. Appellant had time to prepare for trial and obtain witnesses, was represented by appointed counsel, and even benefited from a continuance requested by the prosecution. The record does not reflect that appellant was denied the opportunity to prepare for trial.
A further issue raised by appellant is that a continuance would have enabled him to subpoena "Pam Huffmen," the victim alleged in the indictment, and establish that she was not the true alleged victim in the case, based upon the prosecution's giving the victim's name as Karen Lehman at the plea hearing. Nothing can be gleaned from the record regarding the source of this discrepancy in the victim's name, whether it be use of an alias by the victim or some other more profound misidentification. What the record does reveal, however, is the absence of any objection by appellant or counsel at the plea hearing regarding the name of the alleged victim, or any attack on the accuracy of the indictment prior to trial. Appellant had over two months prior to the trial date to consider the name of the alleged victim in the indictment, but never raised the issue. There is therefore no indication from the record that additional time would have allowed appellant to prepare an effective defense based on this issue.
The presence of an abuse of discretion in granting or denying a continuance depends on "the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." Ungar v. Sarafite (1964), 376 U.S. 575, 589; see, also, Unger, supra. Appellant, in the present case, has not demonstrated a denial of due process by the trial court's denial of a continuance, because appellant cannot demonstrate from the record any prejudice resulting from the denial. State v. Sowders (1983), 4 Ohio St.3d 143,144. Appellant's first assignment of error is accordingly overruled.
Appellant's second assignment of error asserts that appellant's plea was coerced and involuntary and should not have been accepted by the trial court. Appellant argues that he was given the choice of proceeding to trial without witnesses or pleading guilty; that the interaction between the court, appellant, and his counsel indicate the involuntariness and lack of preparation regarding his plea; and there is the additional claim of noncompliance with Crim.R. 11.
Crim.R. 11 requires that the trial court determine whether "the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved." Crim.R. 11(C)(2)(a). The trial court is also required to determine that the defendant understands he is waiving his right to a jury trial, to confrontation of witnesses, a compulsory process to obtain favorable witnesses, and a proceeding where guilt must be proved beyond a reasonable doubt. Substantial compliance with Crim.R. 11 at a plea hearing is sufficient, absent a showing of prejudice. State v. Stewart (1977), 51 Ohio St.2d 86. In the present case, the trial court ran through the standard litany of Crim.R. 11 questions, receiving appropriate, albeit brief, responses from appellant. The court conducted a dialogue with appellant, asking whether the plea agreement bore appellant's signature, whether he had discussed the case with his attorney before signing the plea agreement and considered his options, including his right to a jury trial. The court also asked whether appellant had freely and voluntarily signed the plea form. The court asked appellant if he understood that, if the case went to trial, appellant would have the right to cross examine and question witnesses, including the victim, and appellant again responded affirmatively.
At the point where the court inquired as to whether appellant was aware that he would have the right to subpoena witnesses, appellant broke his string of affirmative responses and stated:
THE DEFENDANT: Does that mean I get a continuance?
 THE COURT: No, sir. You can have your trial today. We have people lined up, if that's what you want.
 THE DEFENDANT: How do I get my people in here to testify?
 THE COURT: You have a right to have them here by subpoena.
 THE DEFENDANT: So I can subpoena them today and get a continuance?
 THE COURT: You will not be granted a continuance, Mr. Moore.
THE DEFENDANT: Yes, your honor.
 THE COURT: Do you understand, though, if you wanted to have a trial here, provided you could get witnesses here in this courtroom by subpoena or otherwise, you would have a right to present a defense?
THE DEFENDANT: Yes, your honor.
THE COURT: Do you understand that, correct?
THE DEFENDANT: No, your honor.
MR. JELEN: Yes, he does, your honor.
 THE COURT: Mr. Moore, you understand that you can testify on your own if you like. You are here present in court, correct, at this time?
THE DEFENDANT: Yes, your honor.
 THE COURT: So do you understand that you could subpoena witnesses and/or present a defense, if you chose to, in front of a jury?
THE DEFENDANT: No, your honor.
 THE COURT: You do not understand that? Mr. Moore, what is [it] that you don't understand?
 THE DEFENDANT: If I want to get my people to testify, you tell me that I don't get a continuance, how am I going to get ahold of them to come and testify on my behalf?
 THE COURT: Well, we can issue subpoenas for you. Phone calls can be made on their behalf, although we can't make them come in without a subpoena.
 The ultimate question you keep going back to, Mr. Moore, is will you be given a continuance, and the answer is, no.
 THE DEFENDANT: I mean, I feel like I am being railroaded.
THE COURT: How is that?
 THE DEFENDANT: Because I am not — I ain't got a fair trial.
 THE COURT: We will give you one, Mr. Moore. [Tr. at 5-7.]
The court thereafter, in view of appellant's reluctance to choose between going to trial without a continuance and pleading guilty, ordered a recess. After the hearing resumed, appellant indicated he was then prepared to plead guilty. The court asked further questions regarding the voluntariness of the plea. The only point at which appellant expressed reservations was when the court asked if counsel had explained line-by-line the plea agreement to him and appellant stated no, but that he had "looked over it," and had the opportunity to discuss it with counsel. When asked if he was entering the plea voluntarily and had signed the plea agreement of his own free will, appellant answered "yes, your honor." Appellant thereafter continued to state that he should be granted a continuance, but that he would plead guilty under the circumstances.
Although, for the most part, appellant's responses to the trial court's questions were brief, they were responsive and indicated his assent, except for his continued requests for a continuance. As stated above in connection with appellant's first assignment of error, we find no error on the trial court's part in denying such a continuance. While appellant's attitude at the plea hearing, as far as can be ascertained from the transcript, exhibits a certain degree of resentment, or at least diffidence towards the proceedings, the record does not evidence a lack of voluntariness on the part of appellant in pleading guilty. While appellant stated that he felt he was being "railroaded" because of the absence of a continuance, appellant did not dispute the brief statement of the facts presented by the prosecution, or the prosecution's characterization of the case. Appellant answered affirmatively to all pertinent questions regarding the maximum possible sentence and the joint recommended sentence, and appears to have been properly informed on this aspect. Although, at one point, appellant rather inappositely asked whether he would be receiving a sentence to "boot camp," the more reliable indicator of appellant's voluntary plea is his affirmative response to the questions regarding possible maximum and minimum sentences and the recommended sentence.
In sum, reluctance does not equate to involuntariness, and we find that Civ.R. 11 was more than substantially complied with in the present case. Appellant's plea was voluntarily entered and the plea hearing was properly conducted. The trial court did not error in accepting appellant's guilty plea and, therefore, appellant's second assignment of error is overruled.
Appellant's third assignment of error asserts ineffective assistance of trial counsel prior to and during the plea proceedings. In order to establish a claim of ineffective assistance of trial counsel, a defendant must first demonstrate that his trial counsel's performance was so deficient that it was unreasonable under prevailing professional norms. Strickland v. Washington (1984), 466 U.S. 668, 687-688. A defendant must then establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 * * * A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." * * * [Id. at 689.]
Appellant first faults counsel for allowing appellant to plead guilty despite the discrepancy between the victim's name in the indictment and the name given at the plea hearing. An indictment may be amended, even after a guilty plea, to conform to the correct name of the victim or other facts. State v. Ahedo (1984), 14 Ohio App.3d 254; Dye v. Sacks (1962), 173 Ohio St. 422, 425 ("[i]rrespective of the name of the victim, the crime charged was armed robbery, and the amendment did not change this in any way whatsoever"). Nothing in the present record indicates that the discrepancy over the victim's name would have exculpated appellant of the crime for which he was charged, or presented a defense to the indictment. There is no indication from the record that appellant informed counsel of the name discrepancy, and that counsel failed to act on a possible defense in this respect. Appellant himself did not raise the victim's name at the hearing as an issue and it is difficult to ascertain from the record that counsel was deficient in this respect.
Appellant also asserts that trial counsel was ineffective for failing to subpoena witnesses, failing to file discovery, and failing to prepare for trial. Again, we are limited to the record before us. There is no indication from the record of what trial counsel might have effectively done that was not done. The failure to subpoena witnesses will not be a substantial violation of essential attorney duties in the absence of showing that testimony of any of the witnesses would have aided the defense. Middletown v. Allen (1989), 63 Ohio App.3d 443, 448; State v. Reese (1982), 8 Ohio App.3d 202. Appellant also asserts that no substantive mitigation was presented at the sentencing hearing, without suggesting whether mitigating evidence was, in fact, available to trial counsel. Appellant also points to the failure to file a witness list or move for a bill of particulars, without suggesting that helpful witnesses were available, or that a bill of particulars would have established a defense. In summary, appellant is forced to argue ineffective assistance of counsel in a vacuum, given the state of the record. For purposes of this direct appeal, none of the foregoing establish ineffective assistance of trial counsel.
Finally, appellant argues that trial counsel was ineffective for failing to review the plea agreement line-by-line with appellant in light of appellant's limited education and lack of familiarity with the judicial system. Appellant's brief on appeal concedes that there is no absolute duty for trial counsel to review a plea agreement line-by-line with a client. Moreover, trial counsel stated that he had spent two and one-half hours discussing the case with appellant, with further discussion during the recess of the plea hearing. While appellant did state in response to the trial court's question that he had not reviewed the plea agreement line-by-line, appellant also stated that he understood the plea agreement. Appellant fails to establish ineffective assistance of trial counsel in this respect.
Finally, appellant argues that several questions on the record at the plea hearing demonstrate appellants incomprehension of the effect of a jointly re-commended four-year sentence. Appellant did ask whether he would get probation or boot camp. Appellant also stated, however, that he understood the maximum and minimum sentences for the crime to which he would plead and, that, there was a joint recommendation for a four-year sentence. Overall, the record does not reveal "confusion" by appellant, but reluctance to accept the consequences of his crime and subsequent plea. Trial counsel stated on the record that the sentencing range and joint recommended sentence had been discussed with appellant, and that appellant understood them as they had been explained to him. It is unclear what more trial counsel could have done in discussing the possible sentence with appellant and no ineffectiveness can be demonstrated in this respect.
In summary, appellant has not demonstrated that trial counsel's conduct fell below prevailing professional norms. Appellant's third assignment of error is overruled.
Appellant's fourth assignment of error asserts prosecutorial misconduct in that the victim's name was not correctly stated in the indictment and not subsequently amended by the prosecution prior to trial, or disclosed in discovery materials filed prior to trial. Appellant's brief also concedes however that there is nothing on the record which would indicate a date upon which the state became aware of the error, or that the discrepancy in the victim's name resulted from any act or omission by the prosecutor. Appellant's fourth assignment of error is therefore overruled.
Accordingly, appellant's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
 _______________ DESHLER, J.
TYACK and LAZARUS, JJ., concur.